SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
   A Limited Liability Partnership
   Including Professional Corporations
CHRISTOPHER VAN GUNDY, Cal. Bar No. 152359
ABBY H. MEYER, Cal. Bar No. 294947
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
Telephone:    415.434.9100
Facsimile:    415.434.3947
E mail        cvangundy@sheppardmullin.com
              ameyer@sheppardmullin.com

Attorneys for Plaintiff BLEND, LLC,
a California Limited Liability Company

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BLEND, LLC, a California limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>GLENWOOD SMOKED PRODUCTS, INC., an Idaho corporation, GLENWOOD SNACKS, LLC, an Idaho limited liability company, MITCH SCOTT, an individual, CLARK SCOTT, an individual, KOLBAN SCOTT, an individual, SCOTT ZABRISKIE, an individual, and DANIEL HALLER, an individual,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF FOR:**<br><br>1. **BREACH OF CONTRACT;**<br>2. **BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING;**<br>3. **BREACH OF FIDUCIARY DUTIES;**<br>4. **INTENTIONAL INTERFERENCE WITH CONTRACT;**<br>5. **INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE;**<br>6. **NEGLIGENT INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE;**<br>7. **UNFAIR BUSINESS PRACTICES; AND**<br>8. **PUNITIVE DAMAGES**<br><br>**DEMAND FOR JURY TRIAL** |

BLEND, LLC ("Plaintiff" or "Blend") respectfully submits this Complaint for Damages and Equitable Relief against GLENWOOD SMOKED PRODUCTS, INC. ("Glenwood Smoked Products"); GLENWOOD SNACKS, LLC ("Glenwood Snacks") (the corporate Defendants are collectively herein referenced as "Glenwood"); MITCH SCOTT; CLARK SCOTT; KOLBAN SCOTT; SCOTT ZABRISKIE; and DANIEL HALLER (collectively, the "Individual Defendants") (all Defendants are collectively herein referenced as "Defendants"), as follows:

## NATURE OF ACTION

1.      This action for damages and equitable relief arises from Defendants' wrongful refusal or failure to turn over to Blend the recipe for Blend's "Barbacoa" style jerky products (the "Jerky Product" or "Jerky Products") upon Blend's demand as Blend and Glenwood Smoked Products contractually agreed.  "Barbacoa" style refers to Blend's proprietary formula for beef and pork jerky of a certain moisture level and cuts of meat, seasoned with Mexican spices.  Blend and Glenwood Smoked Products previously had agreed, as reflected in a Recipe/Formulation Agreement, dated April 1, 2016 ("Recipe Agreement") and in other communications and courses of conduct, that Glenwood Smoked Products would develop the Jerky Products recipes (the "Recipes" or the "Recipe"), maintain their confidentiality, would make all submissions to the U.S. Department of Agriculture for mandatory labeling pre-market approval, and would ensure that the Recipes used to manufacture the Jerky Products were in accordance with the specifications on file with the U.S. Department of Agriculture.

2.      Between July 2016 and December, 2017, Glenwood Smoked Products developed the Recipes for the Jerky Products and manufactured them for Blend under Blend's direction.  After a change in ownership of Glenwood in or around January of 2018, the new owners decided to cease manufacturing the Jerky Products for Blend.  Not coincidentally, the new owners of Glenwood were in the business of manufacturing and distributing their own jerky products that competed with Blend's Jerky Products.

3.     Once Glenwood decided no longer to manufacture the Jerky Products, it was critical for continued distribution of the Jerky Products that Glenwood turn over to Blend complete Recipe information without delay because Blend never had manufacturing capability of its own and would need to line up a new manufacturer in short order.  Blend demanded that Glenwood turn over complete Recipe information as was its right under the Recipe Agreement.  Because Glenwood did not comply with its contractual obligations to do so, Blend could not approximate the original Recipe and obtain U.S. Department of Agriculture labeling approval quickly enough to fill existing orders and to maintain continued interest in the product.

4.     In order to replicate the original flavor profile of the Jerky Products Recipe approved by Blend and which was successful in the marketplace, and to ensure compliance with the specifications on file with the U.S. Department of Agriculture, it was necessary for Glenwood to maintain complete Recipe information, regarding not only the type of ingredients, but also their specifications, the processing steps and processing order, weights, measures,  processing time, temperature, and any application method necessary to manufacture the Jerky Products.  The exactitude of the information necessary for Recipe in fact was written into the Recipe Agreement.  Defendants failed to hand over sufficient information as to the Recipes, thereby preventing Blend from continued production, distribution and sales of the Jerky Products, and causing Blend significant loss of future sales and investment in the Jerky Products, as more fully explained herein.

5.     Glenwood committed these wrongful actions with the malicious, vile and despicable intent in part to put Blend out of the jerky business for the benefit of Glenwood's own jerky products (and financial gain related thereto).  As a direct and proximate result of Glenwood's wrongful actions as more fully described herein, Blend lost a key Costco account and many other customers, such as Smart and Final, for the Jerky Products, in addition to its substantial investment in the development and marketing of the products.  Glenwood's actions constituted breaches of its contractual, fiduciary and

tort owed duties to Blend, entitling Blend to compensatory damages, restitution, and punitive damages.

### THE PARTIES

6. Plaintiff Blend, LLC, is, and at all times mentioned herein was, a limited liability company organized and existing under the laws of the State of California with its principal place of business in Vacaville, California. Blend, LLC and each of its members, is a citizen of the State of California. It owns and manages food product brands, including the Barbacoa-style Jerky Products at issue here.

7. Plaintiff is informed and believes, and on that basis alleges, that Defendant Glenwood Smoked Products, Inc. is an Idaho corporation organized and existing under the laws of Idaho, with its principal place of business in Idaho Falls, Idaho, and therefore is a citizen of the State of Idaho.

8. Plaintiff is informed and believes, and on that basis alleges, that Defendant Glenwood Snacks, LLC, is a limited liability company organized and existing under the laws of the State of Idaho, with its principal place of business in Saint Anthony, Idaho. Glenwood Snacks, LLC, and each of its members, are citizens of the State of Idaho.

9. Plaintiff is informed and believes, and on that basis alleges, that Defendant Mitch Scott is a citizen of the State of Idaho, residing and working in Idaho, and was responsible in part for wrongdoing alleged herein as a controlling officer, director, shareholder and/or managing agent of Glenwood Smoked Products, Inc.

10. Plaintiff is informed and believes, and on that basis alleges, that Defendant Clark Scott is a citizen of the State of Idaho, residing and working in Idaho, and was responsible in part for wrongdoing alleged herein as a controlling officer, director, shareholder and/or managing agent of Glenwood Smoked Products, Inc.

11. Plaintiff is informed and believes, and on that basis alleges, that Defendant Kolban Scott is a citizen of the State of Idaho, residing and working in Idaho, and was responsible in part for wrongdoing alleged herein as a controlling officer, director, shareholder and/or managing agent of Glenwood Smoked Products, Inc.

12. Plaintiff is informed and believes, and on that basis alleges, that Defendant Scott Zabriskie is a citizen of the State of Idaho, residing and working in Idaho, and was responsible in part for wrongdoing alleged herein as a controlling officer, director, shareholder, managing agent and/or member of Glenwood Smoked Products and/or Glenwood Snacks, LLC.

13. Plaintiff is informed and believes, and on that basis alleges, that Defendant Daniel Heller is a citizen of the State of Idaho, residing and working in Idaho, and was responsible in part for wrongdoing alleged herein as a controlling officer, director, managing agent and/or member of Glenwood Snacks, LLC and/or its affiliates.

14. Plaintiff is informed and believes, and on that basis alleges, that at all relevant times, Defendants were the agents, joint venturers and affiliates of each other with respect to the maintenance of complete information as to the Recipes; ensuring that the Jerky Products were manufactured in accordance with specifications on file with the U.S. Department of Agriculture; and the sourcing, processing and ultimate shipping of the Jerky Products. They aided and abetted each other's acts, were co-conspirators, and the corporate entities were alter egos of each other and of the controlling members, shareholders, principals and managing officers, directors and managing agents.

## JURISDICTION AND VENUE

15. This Court has subject matter jurisdiction over Blend's claims pursuant to 28 U.S.C. Section 1332(a) and (c) because Plaintiff and Defendants are citizens of different states, and the amount in controversy is in excess of $75,000, excluding interest and costs.

16. Venue is proper in this judicial district pursuant to 28 U.S.C. Section 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this District, as is more fully explained herein. Defendants' breach of contract, breach of fiduciary duty, interference with contract and other wrongs more fully set forth herein either occurred in, or substantially caused harm in, California. Furthermore, venue is proper in this district because Glenwood specifically agreed to the local jurisdiction of the enforcing party, Blend, as per the Recipe Agreement: "the covenants of this Agreement

may be enforced by the other party in the local jurisdiction of the enforcing party; and, to that end, each party consents to jurisdiction (and waives any objection based on inconvenient forum) in the jurisdiction of the other party."

**FACTS**

17. Pursuant to the Recipe Agreement, Glenwood Smoked Products, and later, its successor-in-interest, Glenwood Snacks, were obligated to develop, keep confidential, and to be prepared to turn over to Blend the Recipe, upon Blend's request, for the Jerky Products. A true and correct copy of the Recipe Agreement is attached as Exhibit A. The Recipe Agreement provided that Blend would have "full ownership rights to these recipes."

18. In addition to owning the Recipes, Plaintiff contractually was entitled to possession of the Recipes upon demand by Plaintiff at anytime pursuant to the Recipe Agreement: "[s]hould Blend choose to use any of these recipe(s) developed by Glenwood for any reason, including manufacturing outside of Glenwood's services, Glenwood agrees to provide all recipe development/formulations to Blend LLC."

19. From mid-2016 through the end of 2017, Glenwood Smoked Products, a co-manufacturer of food products, filled purchase orders issued by Blend for Jerky Products. During this period, Blend began to enjoy substantial sales of the Jerky Products, at Costco Wholesale, Inc. ("Costco") tradeshows and in sales to numerous other customers. Blend expended considerable sums of money to develop and market these products.

20. In or around late 2017, Blend began to notice that the quality of the Jerky Products began to decline, with mold issues, and with the apparent increase in use of water to increase weight at low cost, as just two examples. Unbeknownst to Blend at the time, Glenwood apparently failed to follow the original Recipes and increased the amount of apple juice to increase its margins, among other changes. At that time, Glenwood denied or suppressed the true causes of the failure to follow the original Recipes, and made various excuses for the quality issues instead.

21.     In or about January, 2018, Blend received notice that Glenwood Smoked Products had been sold to new owners, and that ultimately Glenwood would operate under the new name, Glenwood Snacks, LLC. Shortly thereafter, Glenwood Snacks purported to give six months' notice of cancellation of a manufacturing agreement between Glenwood Smoked Products and Blend. Glenwood Snacks did not dispute that it succeeded to the rights and liabilities of Glenwood Smoked Products after the acquisition, which included the rights and obligations pertaining to the Recipe Agreement.

22.     As opposed to Glenwood Smoked Products, on information and belief, Glenwood Snacks had a pre-existing line of jerky products in competition with Blend's Jerky Products.

23.     In early 2018, Costco Australia issued a purchase order to Blend for substantial quantities of the Jerky Products. This was a critical step in wider distribution of the Jerky Products within the various regions of Costco. Blend then issued a purchase order to Defendants for the manufacture of Jerky Products in sufficient quantities to fulfill the Costco order.

24.     The new owners of Glenwood purported to negotiate the terms of filling this Costco Australia order with Blend, but in reality, had decided unbeknownst to Blend to cease manufacturing Jerky Products for Blend during the remaining six months' of the cancellation notice. When it became apparent to Blend that it might not be able to agree with Defendants upon the terms of manufacturing product for the Costco Australia order, Blend demanded repeatedly that Glenwood Snacks turn over the Recipes pursuant to the Recipe Agreement.

25.     For example, Blend requested from Defendants possession of the Recipes on or about February 14, 2018 in correspondence indicating: "[w]e need all recipes in complete detail within 3 days of today."

26.     On February 19, 2018, Blend again followed up with its request in an email to Defendants entitled "Recipe Needed from Glenwood." Defendants responded by

indicating: "Glenwood's team is working on your request sent over yesterday, it may take a couple of days to get all the information that you are requesting."

27. Blend again continued to document its multiple requests for the Recipes in a March 5, 2018 letter to Defendants in which it indicated: "we have asked for this at least 5 times already, which is concerning."

28. On March 11, 2018, Blend again informed Defendants in correspondence that "[w]e are also waiting for our complete Recipe agreements in full . . . ."

29. Defendants never disputed that Blend was entitled to a turnover of the Recipes. Defendants never provided sufficient detail and paperwork regarding the Recipes to enable Blend to arrange for another co-manufacturer to produce the Jerky Products soon enough to fill existing and anticipated purchase orders, and in accordance with the labeling pre-approved for these products by the U.S. Department of Agriculture. At all relevant times, Defendants were aware that Blend could not fill the Costco Australia order and could not continue to source the Jerky Products to other customers unless Defendants either manufactured the Jerky Products, which they decided not to do, or turned over to Blend, as contractually agreed, complete information as to the Recipes.

30. Blend was not able to replicate the Recipes in time to satisfy the demand of current and future customers, and to ensure that any new recipe met the specifications on file with the U.S. Department of Agriculture. To replicate the successful original flavor profile of the Recipes, or develop new ones, Blend would have had to identify not only product inputs meeting certain specifications in relative proportions to match the flavor profile that was previously successful, and the necessary processing steps, but also to identify key suppliers and obtain U.S. Department of Agriculture labeling approval given the new formulation. The Recipe information that Glenwood did provide to Blend did not appear to match what was on file with U.S. Department of Agriculture, and even then, Glenwood was slow to turn over the U.S. Department of Agriculture filings where it was registered in Glenwood's name and not the name of the owner, Blend.

31.     As a result of Defendants' delay and ultimate failure to turn over complete Recipe information and USDA filing information, Blend lost: 1.5 years of sales, including outstanding purchase orders, anticipated purchase orders, and ultimately the customer base of the Jerky Products, its investment in product development and in trade shows (as well as profit from cancelled trade shows); the costs of obsolete bags, bag design, and website design; product that was not sellable due to product not within specifications; travel costs; warehouse costs; the associated costs to re-develop the product; and brand equity.

## FIRST CLAIM FOR RELIEF

(Breach of Written Contract)

(Glenwood Defendants)

32.     Plaintiff hereby repeats, re-alleges, adopts and incorporates paragraphs above and below as though fully set forth herein.

33.     As reflected in the attached Recipe Agreement executed by Glenwood Smoked Products, Inc. and Blend, LLC on April 1, 2016, and in other written or oral communications, which became binding on Glenwood Snacks, LLC as the assignee or successor-in-interest of Glenwood Smoked Products, Inc., Blend and Glenwood were parties to the Recipe Agreement.  The Recipe Agreement obligated Defendants to turn over all "developments/formulations" regarding the Recipes at Blend's request.  The Recipe Agreement further provided that: "[f]ormulations include ingredients, specifications, manufacture of ingredients, processing steps including order of process, weights, measures, time, temperature, etc., and any application methods relevant to flavoring the jerky."

34.     Defendants breached the Recipe Agreement by, among other actions, refusing or failing to respond to Blend's multiple requests for complete information as to the Recipes.  Defendants further breached the Recipe Agreement by failing to maintain complete information as to the Recipes to ensure compliance with the specifications on file with the U.S. Department of Agriculture.

35. Blend has performed all, or substantially all, of the material terms or conditions that the Recipe Agreement required it to do. Blend is also excused from performing any part of the Recipe Agreement it has not performed. All conditions required for the Defendants' performance have occurred.

36. As a direct and proximate result of their breach of the Recipe Agreement, Defendants were a substantial factor causing Blend to suffer damages in the form of lost sales and other incidental and consequential damages in an amount to be proven at trial, but at least in excess of $75,000.

## SECOND CLAIM FOR RELIEF

(Breach of the Implied Covenant of Good Faith and Fair Dealing)

(Glenwood Defendants)

37. Plaintiff hereby repeats, re-alleges, adopts and incorporates paragraphs above and below as though fully set forth herein.

38. In the Recipe Agreement between the Defendants and Blend, there is implied a covenant of good faith and fair dealing. This implied covenant obligated Defendants to refrain from doing anything to interfere unfairly with the right of Blend to receive the benefits of the Recipe Agreement, including, for example, the covenant of maintaining complete information as to the Recipes so that Blend could obtain that information upon its request as was its right under the Recipe Agreement.

39. Blend has performed all, or substantially all, of the material terms or conditions that the Recipe Agreement required it to do. Blend is also excused from performing any part of the Recipe Agreement it has not performed. All conditions required for the Defendants' performance have occurred.

40. Defendants breached this implied covenant, among other reasons, by failing to maintain complete information for the Recipe and to ensure compliance of whatever recipe they actually used with the specifications on file with the U.S. Department of Agriculture; and/or refusing to turn over complete information concerning the Recipes to Blend such that Blend could arrange to manufacture the Jerky Products as before and in

conformance with the labeling information on file with the U.S. Department of Agriculture.

42. As a direct and proximate result of their breach of the implied covenant of good faith and fair dealing, Defendants were a substantial factor causing Blend to suffer damages in an amount to be proven at trial, but at least in excess of $75,000.

## THIRD CLAIM FOR RELIEF

(Breach of Fiduciary Duties)

(All Defendants)

42. Plaintiff hereby repeats, re-alleges, adopts and incorporates paragraphs above and below as though fully set forth herein.

43. By virtue of the relationship between the parties and their assigns or successors-in-interest reflected in the Recipe Agreement, Blend reposed confidence in: Glenwood Smoked Products, its officers, directors, managing agents and controlling shareholders; and/or in its successor and/or assign, Glenwood Snacks, and Glenwood Snack's members and managing agents, by entrusting to them the development and maintenance of the Recipes for the Jerky Products; the responsibility for obtaining U.S. Department of Agriculture pre-market labeling approval; the responsibility for ensuring that the Recipes were consistent with the information on file with the U.S. Department of Agriculture; by giving Glenwood the right of first refusal to manufacture the Jerky Products; and by trusting that Glenwood would timely turn over the Recipes upon Blend's requesting them.  Glenwood voluntarily accepted or assumed to accept these confidences.

44. The relationship between Blend and Defendants gave rise to fiduciary duties under which each party had a duty to act with the utmost good faith and in the best interests of the other.

45. Defendants breached each of the confidences reposed in them by Blend, and thereby breached their fiduciary duties to Blend, by failing to act as a reasonably careful business partner would have acted under the same or similar circumstances.  Specifically, and as elsewhere alleged herein, Defendants failed properly to maintain the Recipes or that

the Recipe used conformed with specifications on file with the U.S. Department of Agriculture; and failed and/or refused to turn over sufficient information concerning the Recipes such that Blend could find another co-manufacturer to fill the purchase orders for Costco Australia and other Blend customers. Defendants' breaches of their fiduciary duties caused Blend to lose its investment in the Jerky Products and current and future sales, as noted elsewhere herein, to Blend's great detriment. Defendants did so in part to eliminate Blend as a competitor to its own jerky products, which is further indication of Defendants' acting contrary to, and in bad faith towards, Blend's interests.

46. At no time did Blend consent to Defendants' conduct in this regard.

47. As a direct and proximate result of their breach of fiduciary duties, Defendants were a substantial factor causing Blend to suffer damages in an amount to be proven at trial, but at least in excess of $75,000.

## FOURTH CLAIM FOR RELIEF

(Intentional Interference with Contractual Relations)

(Defendants Glenwood Snacks, Zabriskie, Haller)

48. Plaintiff hereby repeats, re-alleges, adopts, and incorporates paragraphs above and below as though fully set forth herein.

49. Blend agreed to fill the aforementioned purchase orders issued by Costco Australia for certain quantities of the Jerky Products, as well as other outstanding purchase orders from other customers, and Defendants were aware of at least the Costco Australia purchase order and Blend's ongoing sales and contractual commitments to other customers.

50. Defendants intended to cause, and in fact did cause, Blend to breach its agreements with Costco Australia and other customers with outstanding purchase orders by failing to turn over complete information as to the Recipes to enable Blend to arrange for production of the Jerky Products by another manufacturer and in accordance with the labeling submissions on file with the U.S. Department of Agriculture, among other actions. Defendants' failure to turn over complete information as to the Recipes and in accordance

with information on file with the U.S. Department of Agriculture constituted the independent wrong of breaching the Recipe Agreement.

51.     As a direct and proximate result of their intentional interference with contract, Defendants were a substantial factor causing Blend to suffer damages in an amount to be proven at trial, but at least in excess of $75,000.

## FIFTH CLAIM FOR RELIEF

(Intentional Interference with Prospective Economic Relations)

(Defendants Glenwood Snacks, Zabriskie, Haller)

52.     Plaintiff hereby repeats, re-alleges, adopts, and incorporates paragraphs above and below as though fully set forth herein.

53.     Blend enjoyed economic relationships with Costco Australia and other customers (such as Smart and Final) that were likely to have resulted in future economic benefit to Blend in that these customers would have placed purchase orders for the Jerky Products with Blend.

54.     Defendants knew that Blend's relationship with these customers would be disrupted if Defendants failed to turn over to Blend complete information as to the Recipes when Blend requested them. Defendants knew that Blend had these relationships, as Defendants had up until this time co-manufactured the purchase orders that these Blend customers placed, and because Blend had asked Defendants to fill the most recent purchase orders. Defendants in fact refused or failed to turn over complete information as to the Recipes to enable Blend to arrange for production by another manufacturer, and in accordance with the labeling submissions on file with the U.S. Department of Agriculture, among other actions. Defendants' failure to turn over complete information as to the Recipes and in accordance with information on file with the U.S. Department of Agriculture constituted the independent wrong of breaching the Recipe Agreement.

55.     By engaging in this conduct, Defendants intended to disrupt Blend's relationships with its customers and/or knew that disruption of the relationship was certain

-13-
SMRH:4830-7124-2647.1                                               COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

or substantially certain to occur. Defendants intended this disruption in part because Defendants had jerky products that competed with Blend's Jerky Products.

56. Blend's relationships with its customers were in fact disrupted, in that it was unable to fill the customers' purchase orders, and ultimately Blend lost all customers for the Jerky Products.

57. As a direct and proximate result of their intentional interference with prospective economic advantage, Defendants were a substantial factor causing Blend to suffer damages in an amount to be proven at trial, but at least in excess of $75,000.

**SIXTH CLAIM FOR RELIEF**

(Negligent Interference with Prospective Economic Advantage)

(Defendants Glenwood Snacks, Zabriskie, Haller)

58. Plaintiff hereby repeats, re-alleges, adopts, and incorporates paragraphs above and below as though fully set forth herein.

59. Blend had economic relationships with Costco Australia and others (such as Smart and Final) that were likely to have resulted in future economic benefit to Blend by the placing of additional purchase orders for Jerky Products by these Blend customers.

60. Defendants knew or should have known that Blend had these relationships, as Defendants had up until this time co-manufactured the purchase orders that these Blend customers placed, and because Blend had asked Defendants to fill the most recent purchase orders.

61. Defendants knew or should have known that Blend's relationship with these customers would be disrupted if Defendants failed to act with reasonable care in turning over to Blend complete information as to the Recipes when Blend requested them. Defendants in fact failed to act with reasonable care by delaying and/or failing to turn over complete information as to the Recipes to enable Blend to arrange for production by another manufacturer, and in accordance with the labeling submissions on file with the U.S. Department of Agriculture, among other actions. Defendants' failure to turn over complete information as to the Recipes and in accordance with information on file with the

U.S. Department of Agriculture constituted the independent wrong of breaching the Recipe Agreement.

62. Blend's relationships with its customers were in fact disrupted, in that it was unable to fill the customers' purchase orders, and ultimately Blend lost all customers for the Jerky Products.

63. As a direct and proximate result of their negligent interference with prospective economic advantage, Defendants were a substantial factor causing Blend to suffer damages in an amount to be proven at trial, but at least in excess of $75,000.

**SEVENTH CLAIM FOR RELIEF**

(Unfair Competition - Cal. Bus. & Prof. Code Section 17200)

(All Defendants)

64. Plaintiff hereby repeats, re-alleges, adopts and incorporates paragraphs above and below as though fully set forth herein.

65. Defendants' conduct as more fully described herein constitutes unfair competition within the meaning of Section 17200 of the California Business and Professions Code in that such acts constituted violations of numerous laws, and otherwise were unfair, unlawful and/or fraudulent. Such acts proximately caused Plaintiff injuries, including lost investment in the product and in the product inputs, product that was unsellable, among other harm, entitling Plaintiff to restitution, attorney's fees, and such other further relief as provided by law.

66. By reason of Defendants' acts, Plaintiff has suffered, and will continue to suffer irreparable harm for which Plaintiff have no adequate remedy at law, unless and until restitution is provided to Blend for Defendants' wrongdoing.

**EIGHTH CLAIM FOR RELIEF**

(Punitive Damages)

(All Defendants)

67. Plaintiff hereby repeats, re-alleges, adopts and incorporates paragraphs above and below as though fully set forth herein.

68.     Defendants' conduct justifies an award of punitive damages because it is despicable, repeated and vile.  Defendants should be punished for their wrongful conduct as an example to other participants in the food business similarly inclined to engage in such despicable conduct.  Defendants acted willfully and maliciously because they acted with a purpose or willingness to commit, or to engage in the conduct in question, and the conduct was not reasonable under the circumstances at the time and was not undertaken in good faith, including, but not limited to, destroying Blend's investment in the Jerky Products and loss of the Costco Australia and other future business opportunities.  Furthermore, Defendants acted with an intent to cause injury such that their conduct was despicable and was done with a willful and knowing disregard for the rights of Plaintiff.  Defendants' conduct was so vile, base, or wretched that it would be looked down on and despised by ordinary decent people.

69.     This conduct constituting malice, oppression, and/or fraud was committed by one or more officers, directors, controlling shareholders, members, or managing agents of Glenwood, who acted on behalf of Glenwood; and/or the conduct constituting malice, oppression, and/or fraud was authorized by one or more officers, directors, controlling shareholders, members or managing agents of Glenwood; and/or one or more officers, directors, controlling shareholders, members, or managing agents of Glenwood knew of this conduct and adopted or approved of it after the conduct occurred.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment as follows:

1.      That the Court enter judgment in favor of Plaintiff and against Defendants, and each of them, on all counts;

2.      For compensatory, incidental, consequential and punitive damages, in the maximum amount provided by law, arising from Defendants' violations of Plaintiff's rights;

3.      For restitution and/or disgorgement of Defendants' profits to Plaintiff;

4.      For declaratory and injunctive relief;

5. For pre-judgment and post-judgment interest;

6. For the costs of suit incurred herein;

7. For attorneys' fees and costs incurred in this action; and

8. For such other and further relief as the Court may deem just and proper.

Dated: July 2, 2019

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By    /s/ Christopher Van Gundy
    CHRISTOPHER VAN GUNDY

Attorneys for Plaintiff BLEND, LLC,
a California Limited Liability Company

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: July 2, 2019

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By   /s/ Christopher Van Gundy
CHRISTOPHER VAN GUNDY

Attorneys for Plaintiff BLEND, LLC,
a California Limited Liability Company