UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BLEND, LLC,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>GLENWOOD SMOKED PRODUCTS, INC., et al.,<br><br>　　　　　Defendants. | Case No. 19-cv-03834-DMR<br><br>**ORDER ON DEFENDANTS' MOTIONS TO TRANSFER VENUE**<br><br>Re: Dkt. Nos. 41, 42 |

Plaintiff Blend, LLC ("Blend") filed this lawsuit against Defendants Glenwood Smoked Products, Inc. ("Glenwood Smoked Products"); Glenwood Snacks, LLC ("Glenwood Snacks"); Mitch Scott; Clark Scott; Scott Zabriskie; and Daniel Haller alleging breach of contract and related claims. Glenwood Snacks, Zabriskie, and Haller (the "Glenwood Snacks Defendants) filed a motion to transfer venue pursuant to 28 U.S.C. § 1406(a). [Docket No. 41.] Glenwood Smoked Products, Mitch Scott, and Clark Scott (the "Glenwood Smoked Products Defendants") separately move to transfer venue pursuant to 28 U.S.C. § 1406(a). [Docket No. 42.] Blend filed a consolidated opposition to both motions (Docket No. 44). This matter is appropriate for determination without oral argument. Civil L.R. 7-1(b). For the following reasons, the motions are denied.

I.  **BACKGROUND**

The following facts are taken from Blend's complaint. Blend is a California company that "owns and manages food product brands." Its principal place of business is in Vacaville, California. Compl. ¶ 6. Both Glenwood Smoked Products and Glenwood Snacks are Idaho corporations with their principal places of business in Idaho. *Id*. at ¶¶ 7, 8. Mitch Scott and Clark Scott are officers, directors, shareholders, and/or managing agents of Glenwood Smoked Products

and citizens of Idaho. *Id*. at ¶¶ 9, 10. Zabriskie is an officer, director, shareholder, and/or managing agent of Glenwood Smoked Products and/or Glenwood Snacks and is an Idaho citizen. Heller is an officer, director, shareholder, and/or managing agent of Glenwood Snacks and is an Idaho citizen. *Id*. at ¶¶ 12, 13.

On April 1, 2016, Blend entered into a "Recipe/Formulation Agreement" with Glenwood Smoked Products. Compl. Ex. A (the "Recipe Agreement"). Pursuant to that agreement, Glenwood Smoked Products agreed to "create jerky recipes for Blend according to Blend's specifications," and the parties agreed that Blend would "have full ownership rights to these recipes." *Id*. In exchange, Blend granted Glenwood Smoked Products "the right of first refusal for any and all orders received by Blend which use the recipes developed by Glenwood [Smoked Products]." *Id*. The Recipe Agreement contains the following forum selection provision:

> Blend LLC and Glenwood [Smoked Products] agrees [sic] that the covenants of this Agreement may be enforced by the other party in the local jurisdiction of the enforcing party; and, to that end, each party consents to jurisdiction (and waves [sic] any objection based on inconvenient forum) in the jurisdiction of the other party.

*Id*. Clark Scott signed the Recipe Agreement on behalf of Glenwood Smoked Products as its President/CEO. An individual named David Ngo signed on behalf of Blend. *Id*.

From July 2016 to December 2017, Glenwood Smoked Products developed recipes for Blend's jerky products and manufactured the products for Blend under Blend's direction. Compl. ¶ 2. In January 2018, Blend learned that Glenwood Smoked Products had been sold to new owners and would operate under a new name, Glenwood Snacks, LLC. Blend alleges that "Glenwood Snacks did not dispute that it succeeded to the rights and liabilities of Glenwood Smoked Products after the acquisition, which included the rights and obligations pertaining to the Recipe Agreement." *Id*. at ¶ 21. Shortly thereafter, Glenwood Snacks purported to give notice of its cancellation of a separate manufacturing agreement between Glenwood Smoked Products and Blend. *Id*. Blend alleges on information and belief that Glenwood Snacks had its own pre-existing line of jerky products that competed with Blend's jerky products. *Id*. at ¶¶ 2, 22.

In February 2018, after attempting to negotiate the terms of a manufacturing agreement with the new owners of Glenwood Smoked Products, Blend repeatedly demanded that Defendants

"turn over complete Recipe information as was its right under the Recipe Agreement" so that it could "line up a new manufacturer" and fill existing orders. *Id*. at ¶¶ 3, 24-28. Defendants failed to do so, preventing Blend from continued production, distribution, and sales of its jerky products, which damaged damaging Blend. *Id*. at ¶ 4.

Blend filed a complaint in July 2019 alleging the following claims: 1) breach of contract, against Glenwood Smoked Products and Glenwood Snacks; 2) breach of the implied covenant of good faith and fair dealing against Glenwood Smoked Products and Glenwood Snacks; 3) breach of fiduciary duties against all Defendants; 4) intentional interference with contractual relations against the Glenwood Snacks Defendants; 5) intentional interference with prospective economic relations against the Glenwood Snacks Defendants; 6) negligent interference with prospective economic advantage against the Glenwood Snacks Defendants ; 7) unfair competition against all Defendants; and 8) punitive damages against all Defendants.

In the complaint, Blend alleges that venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to its claims occurred in this district. It also alleges that venue is proper "because Glenwood specifically agreed to the local jurisdiction of the enforcing party, Blend, as per the Recipe Agreement[.]" Compl. ¶ 16.

Defendants now separately move pursuant to 28 U.S.C. § 1406(a) to transfer the case to the District of Idaho. The Glenwood Snacks Defendants argue that only Glenwood Smoked Products is a party to the Recipe Agreement, and thus they are not subject to its forum selection clause. According to the Glenwood Snacks Defendants, 28 U.S.C. § 1391 governs and the District of Idaho is the proper venue under 28 U.S.C. § 1391(b)(1) and (2).

In the alternative, if the court concludes that the forum selection clause in the Recipe Agreement is enforceable as to all Defendants, the Glenwood Snacks Defendants move to transfer the case to the Eastern District of California, arguing that Blend's "local jurisdiction" is located where Blend has its principal place of business in Vacaville, California, which is in that district.

The Glenwood Smoked Products Defendants also move pursuant to 28 U.S.C. § 1406(a) to transfer the case to the District of Idaho. They also argue that under 28 U.S.C. § 1391, the District of Idaho is the proper venue for this action, and that if the forum selection clause in the Recipe

3

Agreement applies, then venue is proper in the Eastern District of California.

Blend opposes the motions.

## II. LEGAL STANDARDS

"'[V]enue' refers to the geographic specification of the proper court or courts for the litigation of a civil action that is within the subject-matter jurisdiction of the district courts in general[.]" 28 U.S.C. § 1390(a). Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." A forum selection clause may be enforced through a motion to transfer under section 1404(a). *Atl. Marine Const. Co. v. U.S. Dist. Court*, 571 U.S. 49, 59 (2013). The Supreme Court has instructed that forum selection clauses must "be given controlling weight in all but the most exceptional cases." *Id*. at 60 (quotation omitted). Motions to transfer under section 1404(a) are within a district court's discretion and must be determined on an "individualized, case-by case" basis. *Jones v. GNC Franchising, Inc*., 211 F.3d 495, 498 (9th Cir. 2000).

In contrast, 28 U.S.C. § 1406 provides that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a) (emphasis added). The question of whether venue is "wrong" within the meaning of section 1406 is governed by 28 U.S.C. § 1391. *Atl. Marine*, 571 U.S. at 55. Section 1391 provides that

> A civil action may be brought in—
>
> **(1)** a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> **(2)** a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> **(3)** if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).

## III. DISCUSSION

As noted, Defendants separately move pursuant to 28 U.S.C. § 1406(a) to transfer the case to the District of Idaho, essentially arguing that venue in this district is "wrong" and that the District of Idaho is the proper venue under 28 U.S.C. § 1391(b)(1) and (2). In the alternative, if the court concludes that the forum selection clause in the Recipe Agreement applies to Blend's claims against all Defendants, Defendants move to transfer the case to the Eastern District of California, arguing that it is Blend's "local jurisdiction" because Blend's principal place of business is in that district. Therefore, the court construes Defendants' alternative request for relief as a motion to enforce the forum selection clause in the Recipe Agreement and to transfer the case pursuant to 28 U.S.C. § 1404(a) to the Eastern District of California. *See Atl. Marine*, 571 U.S. at 59 ("Section 1404(a) . . . provides a mechanism for enforcement of forum-selection clauses that point to a particular federal district.").

In response, Blend argues that the forum selection clause is enforceable as to all Defendants, and that venue is proper in this district under both the forum selection clause in the Recipe Agreement as well as section 1391(b). It also argues that Defendants' motions should be denied as untimely.

While the parties dispute the applicability of the forum selection clause, they do not dispute its contractual validity. Moreover, the Glenwood Smoked Products Defendants do not challenge, and therefore appear to concede that the forum selection clause applies to Blend's claims against them.[1] Accordingly, given the Supreme Court's instruction that "forum-selection clauses should control except in unusual cases," *see Atl. Marine*, 571 U.S. at 64, the court will consider first whether the forum selection clause applies to the remaining Defendants.

As noted, on April 1, 2016, Blend and Glenwood Smoked Products entered into the Recipe Agreement that includes the following forum selection provision:

> Blend LLC and Glenwood [Smoked Products] agrees [sic] that the covenants of this Agreement may be enforced by the other party in the local jurisdiction of the enforcing party; and, to that end, each party consents to jurisdiction (and waves [sic] any objection based on

---

[1] The Glenwood Smoked Product Defendants did not file a brief in reply to Blend's consolidated opposition to the motions to transfer.

5

inconvenient forum) in the jurisdiction of the other party.

Recipe Agreement. Clark Scott signed the agreement on behalf of Glenwood Smoked Products. *Id*. The Glenwood Snacks Defendants argue that they are not subject to the forum selection clause because they were not parties to the Recipe Agreement.

"[T]he general rule is that a forum-selection clause may be enforced only by and against the parties to the underlying contract," because "[o]rdinarily, a provision in a contract 'may not be invoked by one who is not a party to the agreement.'" *Golden State Orthopaedics, Inc. v. Howmedica Osteonics Corp.*, No. C 14-3073 PJH, 2014 WL 12691050, at *4 (N.D. Cal. Oct. 31, 2014) (quoting *Britton v. Co-op Banking Grp.*, 4 F.3d 742, 744 (9th Cir. 1993)). However, the Ninth Circuit has stated that "a range of transaction participants, parties and non-parties, should benefit from and be subject to forum selection clauses." *Manetti-Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509, 514 n.5 (9th Cir. 1988). In *Manetti-Farrow*, the court found that a forum selection clause designating an Italian court as the court with "sole jurisdiction" over the parties' contractual disputes applied to all of the defendants, including officers of the signatory corporation sued in their individual capacity and three corporate defendants, even though only one of the corporate defendants had signed the agreement containing the clause. The court held that where "the alleged conduct of the non-parties is so closely related to the contractual relationship . . . the forum selection clause applies to all defendants." *Id*. In *Holland Am. Line Inc. v. Warsila North America, Inc.*, 485 F.3d 450, 456 (9th Cir. 2007), the court cited *Manetti-Farrow* in concluding that a forum selection clause was binding upon non-parties "because any transactions between those entities and [the plaintiff] took place as part of the larger contractual relationship" between plaintiff and the signatory defendant. *See id*. ("Just as the disputed conduct in *Manetti-Farrow* arose out of the contract with Gucci Parfums, the alleged conduct of BVNA and BV Canada is tied to Holland America's contract with Bureau Veritas."). *See also TAAG Linhas Aereas de Angola v. Transamerica Airlines, Inc.*, 915 F.2d 1351, 1354 (9th Cir. 1990) ("It is not unreasonable or unjust to enforce the [forum selection] clause even though some of [the individual defendants] did not sign the agreement.").

In this case, Blend's claims against each of the Defendants are closely related to the "larger

contractual relationship" at issue here, namely Blend and Glenwood Smoked Products's rights and obligations under the Recipe Agreement. *See Holland America*, 485 F.3d at 456. Each of Blend's claims are based upon the Recipe Agreement; specifically, Blend alleges that it repeatedly requested that Defendants give Blend the jerky recipes pursuant to the Recipe Agreement and Defendants allegedly failed to turn the recipes over to Blend.

The Glenwood Snacks Defendants do not meaningfully address or distinguish the Ninth Circuit's opinions in *Manetti-Farrow* and *Holland America*, asserting only that they "did not negotiate the terms of and did not benefit from [the Recipe Agreement]." Glenwood Snacks Defs.' Mot. 7. However, they offer no authority distinguishing this case from applicable Ninth Circuit precedent. Moreover, they do not dispute that Blend's claims against them are "closely related to the contractual relationship" between Blend and Glenwood Smoked Products. The court finds that as "the alleged conduct of [the Glenwood Snacks Defendants] is tied to [Blend's] contract with [Glenwood Smoked Products]," the forum selection clause in the Recipe Agreement applies equally to the Glenwood Snacks Defendants. *See Holland America*, 485 F.3d at 456; *see also Ultratech, Inc. v. Ensure NanoTech (Beijing), Inc.*, 108 F.Supp.3d. 816, 822 (N.D. Cal. 2015) (noting that "[w]ith one exception, every district court in [the Ninth Circuit] that has considered whether to apply a forum-selection clause to a corporate officer or related company that was not part of the agreement . . . has enforced that forum-selection clause, provided the claims in the suit related to the contractual relationship," collecting cases); *Golden State Orthopaedics*, 2014 WL 12691050, at *5 (applying forum selection clause because resolution of non-party's tort claims "plainly 'relate[ ] to interpretation of the contract'" at issue and therefore were "closely related" to the contractual relationship).

Having concluded that the forum selection clause in the Recipe Agreement applies to all Defendants, the court now considers whether venue in the Northern District of California is proper pursuant to that provision. As noted, the forum selection clause states that "the covenants of [the Recipe Agreement] may be enforced by the other party in the local jurisdiction of the enforcing party . . ." Recipe Agreement. The agreement does not define the term "local jurisdiction," and neither side engages with the contractual language to address how the court should interpret that

term.

Defendants point to Blend's allegation in the complaint that its principal place of business is in Vacaville, California, which is located in the Eastern District of California. They argue that the Eastern District is therefore Blend's "admitted 'local jurisdiction'" under the Recipe Agreement, and that the case should be transferred there. Glenwood Snacks Defs.' Mot. 9; *see* Compl. ¶ 6.

Blend responds that the allegation regarding its principal place of business supports the basis for diversity jurisdiction and does not speak to the question of "local jurisdiction" under the forum selection clause. Blend contends that this district is its "local jurisdiction," citing the following evidence in support of its position. Perry Abadir, the managing member of Blend, submitted a declaration in which he states that between the date of its formation and July 2016, Blend was located at 1234 Apollo Way, Santa Rosa, California (the "Santa Rosa address"), which is in this district. [Docket No. 44-2 (Abadir Decl., Dec. 16, 2019) ¶ 3.] The Recipe Agreement, which was executed by Blend on April 1, 2016, lists the Santa Rosa office under Blend's name, and Abadir states that the agreement was negotiated and executed by Blend in Santa Rosa. Recipe Agreement; Abadir Decl. ¶¶ 5, 7.

In July 2016, Blend moved from the Santa Rosa office to leased office space at 700 Hartz Way, Danville, California (the "Danville address"), which is located in this district. Abadir states that Blend's lease in Danville has continued until the present day. Abadir Decl. ¶ 3. The Danville address is Blend's "entity address" and "entity mailing address" currently listed with the California Secretary of State. *Id*. at ¶ 2, Ex. A. Blend's California Secretary of State Statement of Information, which is dated October 30, 2019, lists the Danville address as Blend's "Street Address of Principal Office." *Id*. at ¶ 2, Ex. B. Abadir states, "[t]he Danville office serves as the principal administrative and managerial office for Blend since I am the Managing Member and I have spent, and continue to spend, virtually all of my time at that office, managing all aspects of the Blend business from that location." Abadir Decl. ¶ 2. He further states that "[a]ll correspondence related to taxes, banking, accounting, employee health insurance, contracts, invoicing, and purchase orders has been and is directed to [the Danville address]," and "[c]hecks

8

1  issued from Blend's checking accounts bear the Danville address." *Id.*

2  According to Abadir, "[a]t all relevant times, Blend sent and received purchase orders and invoices from its Danville office, and all purchase orders and invoices reflected the Danville address." *Id.* at ¶ 5. He submits a copy of a December 2017 purchase order issued by Blend to "Glenwood Smoked Meats" listing Blend's Danville address, as well as copies of a credit memo and invoices issued in 2018 by Glenwood Snacks listing the Danville address. *Id.* at ¶ 6, Exs. E, F. Abadir explains that in October 2016, Blend leased "a warehouse and small production facility in Vacaville, California," which employs "approximately 8 to 10 full-time employees for packing and managing inventory of other Blend products currently in the marketplace." Abadir Decl. ¶ 8. Blend's jerky products were not processed at the Vacaville facility. *Id.*

Finally, Abadir states that "[a]ll major events and decisions by Blend regarding the Jerky Products occurred first in the Santa Rosa office, and later in the Danville office," including negotiating and executing the Recipe Agreement; receiving and issuing invoices and purchase orders; developing the flavor profile, testing, and arranging for the manufacturing of the jerky products; and overseeing sales, marketing, and labeling design. *Id.* at ¶ 7.

Based on this evidence, Blend argues that the Northern District of California is its "local jurisdiction" because "[s]ubstantially all of Blend's actions regarding the Jerky Products occurred in this District," and thus venue in this district is proper under the forum selection clause.

In their reply, the Glenwood Snacks Defendants note that Blend's "public-facing website has said since at least February 2018 that its 'Main Office' is in Vacaville, and that website continues to say so as of the time of this Reply[.]" Reply 6 (citing http://blendllc.com/contact/, last visited on Jan. 3, 2020). While conceding that Blend's corporate filings with the Secretary of State list the Danville address, they argue that these changes were not made until April 5, 2018. Defendants go on to speculate without factual support that between July 2016, when Blend moved from Santa Rosa, and April 2018, "Blend was clearly already operating out of its 'Main Office' in Vacaville[.]" Reply 6. [*See* Docket No. 48-1 (Shane Decl., Dec. 23, 2019) ¶ 6, Ex. E.]

As previously noted, neither party addresses how the court should interpret the term "local jurisdiction" as used in the Recipe Agreement. Defendants' position appears to be that "local

9

jurisdiction" is synonymous with the location of Blend's "principal place of business," relying on the corresponding allegation in the complaint; they do not offer any authority in support of their position. For its part, Blend's position appears to be that "local jurisdiction" should be evaluated in terms of where it executed the Recipe Agreement, developed the jerky products at issue, and conducted administrative, managerial, and business activities related to the products. It too offers no supporting authority.

The court concludes that Blend has the better argument because it is consistent with the concepts expressed in section 1391(b). That section dictates that venue is proper in a district "in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). "Substantiality is intended to preserve the element of fairness so that a defendant is not haled into a remote district having no real relationship to the dispute." *California Closet Co. v. Ebben*, No. C 08-0625 SI, 2008 WL 1766767, at *7 (N.D. Cal. Apr. 15, 2008) (quoting *Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 294 (3d Cir. 1994)). However, "[s]ection 1391(b)(2) does not require that a majority of the events have occurred in the district where suit is filed, nor does it require that the events in that district predominate." *Rodriguez v. California Highway Patrol*, 89 F. Supp. 2d 1131, 1136 (N.D. Cal. 2000). "Rather, it is sufficient that a substantial part of the events occurred in the challenged venue, even if a greater part of the events occurred elsewhere." *California Closet*, 2008 WL 1766767, at *7 (quotation omitted). *See also Richmond Techs., Inc. v. Aumtech Bus. Solutions*, No. 11-CV-02460-LHK, 2011 WL 2607158, at *10 (N.D. Cal. Jul. 1, 2011) ("for venue to be proper, significant events or omissions material to the plaintiff's claim must have occurred in the district in question, even if other material events occurred elsewhere." (quotation omitted)).[2] The Recipe Agreement is at the heart of this lawsuit and contains the forum selection clause. Blend's uncontested evidence establishes that it executed

---

[2] The court also notes that most courts have interpreted the language of section 1391(b) as providing plaintiffs with a choice of venue, and that the provisions for residential venue and transactional venue in sections 1391(b)(1) and (b)(2) "are of equal dignity, and that neither is preferred." *See* Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 3804, 14D Fed. Prac. & Proc. Juris. § 3804 (4th ed.) (collecting cases). *See, e.g., Modaressi v. Vedadi*, 441 F. Supp. 2d 51, 55 (D.D.C. 2006) ("[T]he language of the statute . . . provides alternative bases of venue." (quotation and citation omitted)).

10

the Recipe Agreement in this district. Further, Blend has submitted uncontested evidence that key activities related to the jerky products took place first in Santa Rosa, and then in Danville, both of which are located in this district. These activities include business activities such as issuing purchase orders and receiving invoices related to the jerky products, as well as Blend's development and testing of the jerky products and arrangements for manufacturing, sales, marketing, and labeling of the jerky products. *See* Abadir Decl. ¶¶ 2, 5-7. There is no evidence that Blend conducted activities related to the jerky products at its Vacaville facility. *See id*. at ¶ 8. In sum, the evidence presented by Blend supports its claim that its "local jurisdiction," as that term is used in the Recipe Agreement, is the Northern District of California. Accordingly, the court denies Defendants' motion to transfer this action to the Eastern District of California.

As the court concludes that the forum selection clause in the Recipe Agreement applies to Blend's claims against all Defendants, and that Blend properly filed suit in this district pursuant to the forum selection clause, it need not reach Defendants' argument that venue in this district is "wrong" under 28 U.S.C. § 1406, or Blend's argument that Defendants' motion is untimely.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motions to transfer are denied.

**IT IS SO ORDERED.**

Dated: January 9, 2020



Donna M. Ryu
United States Magistrate Judge